INHABITANTS OF VASSALBORO' *vs*. GEORGE NOWELL and others.

Kennebec.    Opinion May 29, 1883.

*Taxes.    Collector.    Illegal assessments.*

When a collector of taxes accepts a warrant, with the bills of assessment which are in part illegal, and collects a portion of the taxes, he is under legal obligation to collect of the remainder so much as are legally assessed. WALTON, BARROWS and DANFORTH, JJ., dissenting.

*Orneville* v. *Pearson*, 61 Maine, 552, and *Harpswell* v. *Orr*, 69 Maine, 333, considered.

ON EXCEPTIONS.

Action on the bond of a collector of taxes.

The case was submitted to a referee, and his report states the question and material facts.

The exceptions were to the ruling of the court, accepting the report and ordering judgment for the defendants (except as to N. C. Wyman).

### (Report of referee.)

"Pursuant to the foregoing rule I, the referee therein named, having notified, met, and fully heard the parties, and maturely considered their several allegations and the evidence produced, find and report thereon accordingly, that the writing obligatory declared on, is the deed of the defendants, George Nowell, Jonathan Nowell and William Abbott, and that it was executed also by William F. Tabor, who is dead, and by George H. Pope, against whom the plaintiffs have discontinued on account of his bankruptcy or insolvency, and by one J. O. Wyman, not named as defendant in this suit; and that it was not executed by the defendant, N. C. Wyman, who is in any event entitled to judgment in his favor for his costs of court, to be taxed by the court; and I further report that said writing obligatory has

been lost, and that it was a bond, duly executed by the persons above named, as having become parties to it, and was dated August 17, 1875, and was in the usual form for the penal sum of twenty thousand dollars, and that it was conditioned for the faithful discharge by the said George Nowell of his duty as collector of taxes for said town of Vassalboro', for the year 1875, to which office the said George was legally chosen, and that he accepted the same, and filed this bond, in pursuance thereof executed by himself as principal, and the said Jonathan Nowell and William Abbott, with others, as aforesaid, as sureties, and that said George Nowell was legally qualified as collector for said year, and received from assessors, duly chosen and qualified, a warrant in due form of law for the collection of taxes amounting in all to the sum of $19,648.30, for collecting which he was to have one per cent. He entered upon the collection, and as far as appears he paid over what was due from him for taxes collected. The taxes were assessed upon real estate, personal property and polls — about four-fifths of the whole amount upon the real estate — the balance upon personal estate and polls in legal proportions respectively.

"There was no proper description of the real estate taxed, so that it could be identified and a valid sale made to enforce the collection. The bulk of it simply appeared in the assessment lists, with the name of the party to whom it was taxed as "buildings and (so many) acres of land," or " (so many) acres of land," without other description. But very few pieces of real estate had any other description, or anything by which their location and boundaries could be ascertained. Besides large sums remaining uncollected of the taxes upon real estate, thus defectively assessed, there remains uncollected out of the taxes, for that year, the sum of $600, assessed upon personal property and polls of various individuals.

"But I hold (subject, however, to revision by the court, to whose decision the law is referred for settlement) that the failure of the assessors, so to describe the great bulk of the real estate, as to enable the collector to enforce payment of the tax, by making a valid sale of the land, so far relieved him from the duty

of completing the collection of the taxes, that no action can be maintained on the bond against him and his sureties for his failure, to collect either the portion of the taxes on real estate, remaining uncollected, or the sum of $600, above mentioned, remaining uncollected of the taxes assessed upon personal estate and polls.

"At the request of defendants I further report that it appeared that the amount of taxes assessed in Vassalboro' in 1875, above mentioned — $19,648.30, consisted of $4,528.35, state tax; $1,658.55, county tax; $12,501.00, raised by the town for proper objects, and $960.40, for overlay which the defendants contended was excessive and vitiated the assessments. I based no conclusion, favorable to the defendants, upon the fact, deeming it a mistake of the assessors, which under R. S., c. 6, § 114, would not avoid the assessment.

"But if on the facts, hereinbefore stated, there is a legal reason why no action should be maintained against the defendants for the said George Nowell's neglect to collect the sums remaining uncollected on the commitment to him for the year 1875, then judgment is to be rendered in favor of all the defendants, and for their costs of reference taxed at one dollar and thirty-two cents and costs of court to be taxed by the court.

"But if, notwithstanding these facts, the defendants are liable for the failure of the said collector to collect personal property and poll taxes legally assessed, then judgment should be rendered for the plaintiffs for six hundred dollars, and interest thereon, from the date of the writ to the time when judgment is made up as debt or damage, and for costs of reference taxed at six dollars and fourteen cents, and costs of court to be taxed by the court, against the said defendants, George Nowell, Jonathan Nowell and William Abbott.

William G. Barrows, referee."

*Herbert M. Heath,* for the plaintiffs.

*Joseph Baker,* for the defendants.

The defendants cannot be liable under such an assessment, because the fault or negligence of the plaintiffs themselves, has

deprived the collector of the facilities for fulfilling the conditions of his bond.

By a vote of the town at the March meeting they agreed to pay the collector one per cent for collecting the taxes of that year. The collector accepted this proposition and entered upon the duties of his office, upon the strength of their promise to pay him that sum for collecting all the taxes. This, we hold, was a contract between the town and the collector. Now it is hardly any more work or expense to collect a real and personal estate tax of each tax payer, than to collect the personal estate tax alone. But the town, by their negligence, deprives the collector of all the percentage of the real estate tax, which is four-fifths, at least, and then seek to compel the defendant to collect the personal tax. This is a palpable violation of their contract with the collector and releases him.

The case of *Harpswell* v. *Orr*, 69 Maine, 333, is conclusive on this point. That was not a case of real estate tax alone, but it involved taxes upon both personal and real. The court make no suggestion of confining the decision to real estate taxes alone, and both the language and the reasons given cover each.

So in *Orneville* v. *Pearson*, 61 Maine, 552 ; excepting "animals" in the warrant of commitment, would take away one mode of collecting taxes on personal estate, but not on real estate ; and yet the court there held that the bond was not liable for uncollected taxes. No one ever dreamed of seizing animals to pay a real estate tax, and yet because of that exemption in the warrant and not in the law, the court say it is no breach of the bond not to complete the collection of the taxes. The fact is you cannot divide. The bond is a unit, and if the town, by its own acts, prevent the performance of the whole or any part, the other party has a right to refuse to perform.

There is another illegality here which affects the whole assessment. The overlayings were $26.01, in excess of the five per cent overlay allowed by law. We claim this violates the whole tax. *Elwell* v. *Shaw*, 1 Maine, 339 ; *Huse* v. *Merriam*, 2 Maine,. 375 ; *Mosher* v. *Robie*, 11 Maine, 135.

PETERS, J. A town collector failed to collect a portion of the taxes committed to him. Among the uncollected were taxes upon persons and personal property, amounting to six hundred dollars, which were properly assessed, and also a large amount of taxes upon real estate, assessed under defective and illegal descriptions. The collector complains that, by this insufficient assessment of such real estate, he was deprived of one mode or arm of power by which the collection of that portion of the taxes could be enforced. Does this fact, after the collector has received a portion of both the legal and the illegal taxes, excuse him from a further collection of the legal taxes remaining unpaid? We know of no rule or policy of the law which justifies such a proposition.

We are not prepared to say, for it is not now necessary for us to decide such a question, that a collector would be obliged to accept a warrant to enforce the collection of taxes, a portion of which were defectively assessed, and not legally collectible. But we think that, when he does accept a warrant with the bills of assessment, and collects a portion of the taxes, he is under legal obligation to collect of the remainder so much as are legally assessed. If the rule is to be otherwise, it might just as well be decided that collectors may collect taxes or not, as they please; for we well know that scarcely a city or town in this state, if even one, has ever placed in the hands of its collectors perfect assessments upon all of its real estate. Certainly, a sound public policy will not allow a collector to proceed so far as to gather all the taxes which may be obtained readily and easily, and receive his commission upon them, and refuse to collect the rest of the taxes legally assessed.

We cannot see that the present case is a stronger one for the defendants, because " the great bulk of the real estate in town," was defectively described in the assessment. Logically, the rule would be the same, whether the number of parcels be few or many. The argument for the defendants proceeds upon the ground that the contract between the town and its collector is an entirety, the implication being that the collector is to have a percentage upon all the taxes to be assessed, and that the town

breaks its side of the contract by furnishing imperfect assessments. If this be so, we cannot perceive why the contract is not broken by the town, if the assessment by mistake includes a poll tax upon a deceased person, or upon a person removed from town, or if the assessors abate a portion of the taxes assessed. Who could say, in such case, where the stopping point shall be, beyond which the tax gatherer may not retreat in order to shelter himself from liability? The term, "great bulk," does not describe a measure definite enough to go by. The rule would not be precise or practical. Parties would have nothing but uncertainty to depend upon.

The position of the defense as to the nature of the contract between the parties cannot be sustained. The real relation is that of principal and agent. The agent need not enter upon the work assigned to him, if there be any reasonable objection to it. But entering upon the execution of his duties, he has no right to leave those duties half performed. The collector in the present case could have seen the difficulties in his way, just as well in the beginning as in the end. He is excusable for non-collection, only so far as the town failed to furnish him full and sufficient means with which to enforce collection. That failure here applies not to the whole list of uncollected assessments, but only to a distinct and separable part of them. The burden complained of by the collector is pretended rather than real.

The collector cannot dictate as to what persons or what property shall be assessed. He takes his chances as to that. His compensation is regulated accordingly. If property is omitted from assessment, it is no concern of his. And, surely, if real estate is defectively assessed, it can make no stronger case for him than if not taxed at all. Property illegally taxed may well be regarded as in the condition of property omitted from taxation. So, assessors may make new assessments sometimes: may abate assessments under some circumstances; may correct errors in both warrants and assessments in some cases; and none of these steps taken by the assessors will exonerate a collector from the performance of the duties undertaken by him.

The town is certainly in a dilemma, if this collector can throw up his commission. If he is not under a legal obligation to collect the taxes that are legally and well assessed, then no other collector can be placed under such obligation. Nor do we see that the town officers could ·commit these bills of assessment, in the present condition of things, to a new collector. There is no cause for declaring the office vacant. There is no vacancy to fill. R. S., c. 6, § 121.

The defendants rely upon several cases as approving the doctrine which they contend for. We think the cases fail to support such doctrine. In *Orneville* v. *Pearson*, 61 Maine, 552, it was held that a collector was not obliged to complete the service required under a defective and illegal warrant. The presumption is that the warrant was not sufficient for the enforcement of any of the taxes in that case remaining unpaid. In *Harpswell* v. *Orr*, 69 Maine, 333, a collector was exonerated from completing his services under a valid warrant, where there was no description, in the valuation and assessment, of the real estate taxed. " The omission," it is there said, " deprived the collector of one mode of collecting the tax." It does not appear in that case that any of the unpaid taxes were legally assessed. The doctrine established by those cases is, that a town cannot hold a collector responsible for failing to do what it has neglected to give him the power to do. Nothing more or different from this was in the mind of the court in rendering those decisions. They should be regarded as authorities for nothing beyond it. A collector cannot be obliged to act under an illegal warrant, nor has he all the means furnished by law to collect a tax upon real estate when such estate is not properly and sufficiently described. But so far as taxes are concerned which he has full and legal power to collect, if he enters upon a discharge of his official duties, he should complete those duties at least to the extent of the power conferred.

*Exceptions sustained.*  ·

APPLETON, C. J., VIRGIN, LIBBEY and SYMONDS, JJ., concurred.

*○*

DISSENTING OPINION BY

BARROWS, J. I cannot bring myself to concur with the majority of the court in this case, and I think I ought to state my reasons. It may be that seeing and hearing the details of the evidence as I did as referee, I am more impressed with the injustice of the result than my associates could be by a bald statement of the essential facts which I made at the request of the parties in order to present the question to the court.

It seems to me that the opinion of the majority holds the collector and his sureties to the performance of a contract which they never made. One cannot believe that they ever intended to become bound for the collection of a few hundred dollars assessed upon polls and dribblets of personal property scattered all over town, for the trifling percentage which might be a fair compensation for the collection of many thousands, which would call for no greater expenditure of time, travel and trouble, on the part of the collector. From the very nature of the business to be done, in order to hold the collector to any duty beyond the faithful turning in to the treasury of all voluntary payments that are made to him, a condition is implied that the collector shall be armed with a warrant backed by an assessment that will enable him by due diligence to enforce payment of the bulk of the taxes committed to him in the various ways that the statutes provide. Failure in these particulars was the ground of the decisions in *Orneville* v. *Pearson*, 61 Maine, 552 and *Harpswell* v. *Orr*, 69 Maine, 333.

To me, it looks like trifling with the decision in *Harpswell* v. *Orr*, to suggest that both court and counsel may have been so heedless as to overlook in that case the universal fact that such an assessment includes taxes upon polls and personal property, as well as upon real estate, or to shut our eyes to the fact that the failure to collect all such taxes, if it had been regarded by the court as material, must needs have changed the result there reached. There was no element affecting the liability of the principal and sureties in that case that does not exist here even in greater measure, yet the manifest scope of that decision was to relieve the collector from the obligation to collect poll-taxes

and the like when the bulk of the assessment fails. If the court intend now to overrule that decision, let it be done distinctly so that it may not be left as a stumbling-block in the way of the profession and the court hereafter.

But I still think that all the town can claim is that the collector undertook upon the implied condition above mentioned to collect from a certain number of people scattered over a territory of definite extent an amount of taxes which was approximately known to be, say, $20,000 for one per cent of that amount.

To me it seems an unreasonable construction of his contract to hold that though that condition is unfulfilled and he is deprived by the remissness of the assessors of the most important means of enforcing payment of the great bulk of these taxes he is still bound to go over the same territory, spend the same time and visit the same number of persons, to pick up in poll taxes and other trifling sums a remnant that is of small importance to the town for a compensation that is ridiculously inadequate, upon pain of subjecting himself and his sureties to the payment of their aggregate amount with interest.

On the other hand it would be equally unreasonable for the collector to claim what the opinion says he " logically " might, if he is relieved under the circumstances here presented — that the failure to give him the necessary power over every parcel of real estate assessed or the trifling diminution of the grand total by abatements and the like would furnish him the same excuse. Not so ; the law recognizes the ordinary course of business and the imperfection of all human proceedings. " Substantial performance " of duty is what it requires and it will not regard trivial defects. It asks what may be reasonably and justly expected by and of the parties respectively, and *that* is the rule which it applies to measure their duties to each other. It will not regard the *trifles* which contracting parties may seize upon as pretexts to avoid their obligations — but will take a practical view of the nature of the business to which the contract relates and see what reason and justice demand of each of them. But the opinion claims that the law can furnish no rule for just discrimination, or, in fact, that it can recognize no difference except that which exists

between absolute perfection and total failure. Yet at almost every term of the court we negative this idea in practice and leave it to the jury to determine (as in suits to recover pay for skilled labor for example ) whether there has been a "substantial performance" of a contract, and what it is reasonable and just for the parties to require and expect of each other in various contingencies.

What is tolerable "logic" is not always good law, and may sometimes lead to very unjust results. But the opinion further maintains that "public policy" requires us to punish the collector and his sureties for the negligence of the assessors. It seems to me that the *true* "public policy" requires rather that *all* the town officers shall be held to perform their duties with *reasonable* care and correctness than that such an extraordinary burden should be imposed upon the collector and his sureties by the neglect or want of skill of those whose duty it was to furnish him with a legal warrant to collect a reasonably accurate and legal assessment, such as he had a right to expect when he undertook the collection. The whole substance and effect of the contract of the collector and his sureties here is changed, and they may well say we have entered into no such engagement. There is a radical difference between undertaking the collection of $20,000 in taxes for $200 and the collection of $600 spread over the same territory for $6.

The opinion asserts in effect that the collector ought not to accept the office without examining the assessments. Practically the collector must accept or decline when called upon to take his oath of office, according to the provisions of R. S., c. 3, § § 10 and 15, long before the assessment is made, and his bond is commonly made and delivered before he has an opportunity to make such examination. I think he has a right to presume that there will be a substantial performance of their duties on the part of the other town officers, and where that is found wanting the town cannot hold him or his sureties responsible for the collection of a small fraction of the tax if he declines to proceed farther.

WALTON and DANFORTH, JJ., concurred.